Wendell A. CHAUVIN, Plaintiff–Appellant,

v.

SANFORD OFFSHORE SALVAGE, INC., Southern Shipbuilding Corporation and the Barges "X" and "Y", Defendants–Appellees.

No. 87–4795.

United States Court of Appeals, Fifth Circuit.

March 27, 1989.

C.E. Bourg, II, Edward M. Leonard, Jr., Morgan City, La., for plaintiff-appellant.

Paul C. Miniclier, Winston Rice, New Orleans, La., for Collins.

Kevin J. LaVie, Rufus C. Harris, III, New Orleans, La., for Southern Shipbuilding Corp.

Nan Landry, New Iberia, La., for Sanford Offshore.

Bernard H. Ticer, New Orleans, La., for Ins. Co. of North America.

Before JOHNSON, JOLLY, and JONES, Circuit Judges.

JOHNSON, Circuit Judge.

We are once again called upon to examine the problem of determining whether a party is a seaman or a longshoreman for purposes of applying either the Jones Act, 46 U.S.C.App. § 688, or the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.* The district court determined that the appellant was a longshoreman within the meaning of the LHWCA. Finding that the district court did not err in making this assessment, we affirm.

## I.

Appellant Wendell Chauvin was injured on May 2, 1984, when, while assisting the rigging of a spreader bar to the crane of a derrick barge, a shackling pin fell on his foot.[1] Chauvin sued both his employer, Sanford Offshore, and Southern Shipbuilding, the owner of a barge chartered by Sanford.[2] Chauvin, a member of Sanford's regular work crew, was generally assigned to Sanford's barge, the SEA SALVOR, and when the SALVOR performed offshore salvage work, Chauvin was assigned to that vessel. These assignments were sporadic and unpredictable in both frequency and length.[3] During the gaps between assignments, Chauvin worked in Sanford's salvage yard and assisted in the repair of the SALVOR.

Despite Chauvin's general assignment to the SALVOR, on the date of his injury, Chauvin was working on the SOUTHERN NUMBER 6, a barge chartered by Sanford from Southern for the purpose of lifting equipment which exceeded the SALVOR's capacity. On the morning of the accident, Chauvin and other employees were told by Stephen Sanford, Sanford's operations manager, to assist in transporting equipment from Sanford's yard to the dock. At the dock, Sanford ordered Chauvin and the others to lend assistance to the crew of the SOUTHERN NUMBER 6. While helping to rig the slings of the barge, Chauvin was injured when a pin from a loading sling, weighing approximately 120 pounds, fell onto his foot.[4] Conflicting testimony was introduced as to how the pin became re-

---

1. These facts are set out in the district court's Findings of Fact and Conclusions of Law, Record Vol. 4 at 446. A review of the record convinces us that these findings are not clearly erroneous.

2. Sanford instituted a third-party action against the representative of certain Underwriters at Lloyds of London. The representative, in turn, commenced a third-party action against the Insurance Company of North America for protection and indemnity insurance coverage due Sanford.

3. During 1984, prior to the incident causing Chauvin's injury, the barge worked offshore performing salvage operations the entire month of January, 14 days of February, and one day in March and April.

4. At the time of Chauvin's injury, the SEA SALVOR was six miles away. Neither the SALVOR nor her crew were in any way involved in the accident.

moved from the lifting sling, who sat it upright on the deck, and how it was eventually knocked over.

Chauvin brought a negligence action against Sanford based upon his asserted status as a Jones Act seaman, and against Southern Shipbuilding for its alleged negligence and the alleged unseaworthiness of the SOUTHERN NUMBER 6 under general maritime law or, alternatively, under section 905(b) of the LHWCA.

After hearing evidence on the classification issue, the district court determined that Chauvin was not a seaman, but at the time of the incident, his work required him to be classified as a longshoreman. Consequently, Sanford and its underwriters were dismissed because, as the employer of a person under the LHWCA, Sanford would have no liability except for compensation.[5] Chauvin timely filed this appeal, complaining that the district court erred in determining that he was a person covered by the provisions of the LHWCA rather than the Jones Act. For the reasons set forth below, we affirm the decision of the district court.

## II.

This Court, in *Pizzitolo v. Electro–Coal Transfer*, 812 F.2d 977 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988), clarified the standard for determining whether a claimant should be characterized as a Jones Act seaman or a LHWCA longshoreman. As the Court in *Pizzitolo* noted, seamen and longshoremen are mutually exclusive categories.

The question of whether or not a person is a seaman or longshoreman is a question for the trier of fact. "Within broad limits of what is reasonable, Congress has seen fit to allow juries to decide who are seamen under the Jones Act." *Offshore Co. v. Robison*, 266 F.2d 769, 780 (5th Cir.1959). The Supreme Court has indicated that "a jury's decision is final if it has a reasonable basis, whether or not the appellate court agrees with the jury's estimate." *Senko v. La Crosse Dredging Corp.*, 352 U.S. 370, 77 S.Ct. 415, 417, 1 L.Ed.2d 404 (1957). Because this case was tried to the court, this Court reviews the district court's classification of Chauvin as a longshoreman under the clearly erroneous standard.

The applicable inquiry for determining whether a claimant may be classified as a seaman has undergone several permutations throughout the tenure of the Jones Act. Prior to 1958, this Court applied a test which originated in the First Circuit. The inquiry set out in *McKie v. Diamond Marine Co.*, 204 F.2d 132, 136 (5th Cir.1953),[6] stressed that "[t]he essential and decisive elements of the definition of a 'member of a crew' [are] that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation."

Subsequent Supreme Court decisions[7] suggested that this test should be reevaluated. The panel in *Robison*, speaking through Judge Wisdom in 1959, concluded that

> there is an evidentiary basis for a Jones Act case to go to the jury [on the question of seaman status]: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or

---

5. The proceeding continued against Southern Shipbuilding. The district court weighed the conflicting testimony about the pin, and found that neither Southern, nor the SOUTHERN NUMBER 6 was liable for the injuries because Chauvin failed to establish by a preponderance of the evidence that a Southern employee stood the shackle pin on end and/or caused it to fall on Chauvin's foot. There is significant testimony by other witnesses in the record that Chauvin himself was responsible for knocking the pin onto his own foot. Consequently, the district court's determination that neither Southern nor

the barge are liable is not clearly erroneous, and we affirm the district court's decision.

6. Adopting the test in *Carumbo v. Cape Cod S.S. Co.*, 123 F.2d 991 (1st Cir.1941).

7. *Gianfala v. Texas Co.*, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955); *Grimes v. Raymond Concrete Pile Co.*, 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958); *Butler v. Whiteman*, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958).

performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.[8]

In 1986, this Court sat en banc in *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir.1986) (en banc), to determine whether the test set out in *Robison*, which looked for a substantial part of the work to be accomplished on board a vessel and omitted the prior "aid in navigation" language, should be modified. The Court upheld the *Robison* approach. The en banc Court also indicated that, when assessing status, the factfinder must determine

> if the employee's regularly assigned duties require him to divide his time between vessel and land (or platform). [If so] his status as a crew member is determined "in the context of his entire employment" with his current employer.... This is not an inflexible requirement, however, and does not preclude assessment of the extent of the employee's work aboard a vessel over a shorter time

period if the employee's permanent job assignment during his term of employment has changed. If the plaintiff receives a new work assignment before his accident in which either his essential duties or his work location is permanently changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new job." [9]

Recently, this Court has confronted the specific question of longshoreman status versus seaman status. *Pizzitolo* addressed the role that the claimant's activity at the time of injury plays in determining status. After discussing the legislative and judicial history of both the Jones Act and the LHWCA, the Court concluded that "[a]lthough we have on occasion analyzed the question of whether an employee engaged in longshoring or ship repairing was a member of the crew of a vessel under the *Robison* test, we are persuaded that such an analysis is unnecessary if the employee is engaged in an occupation expressly enumerated in the (LHWCA)." [10] Because workmen engaged in certain enumerated occupations [11] are explicitly covered by the LHWCA if they meet the Act's situs requirement, the Court determined that these

---

**8.** 266 F.2d at 779.

**9.** *Barrett*, 781 F.2d at 1075–76 (citations omitted). The Court noted that while the determination of seaman status, like any factual determination, was generally entrusted to the jury, "when the evidence can lead only to the conclusion that the injured person was a crew member, summary judgment declaring his status is proper." *Id.* at 1074. The Court reversed the district court's grant of summary judgment in favor of the claimant, finding that because "he did not perform a substantial portion of his work aboard a vessel or fleet of vessels, he failed to establish that he was a member of the crew of a vessel." *Id.* at 1076.

> Judge Rubin, dissenting, argued that
>
> [t]he majority refused to determine an injured worker's status as a crew member on the basis of what he was doing when he was injured, but insists that his status must be decided on the basis of what he did in the past, and holds in effect that, unless the worker's 'permanent job assignment' has changed, his duties and status at the time he is injured are irrelevant. In doing so it makes a profound change in the rights of offshore maritime workers who are injured

when assigned to a vessel and exposed to the perils of the sea, and who are in every real sense crew members."

*Id.* at 1076. The dissent went on to argue that determination of status on the basis of the work assignment at the time of injury should be made by the trier of fact, and not by summary judgment, even when the claim to seaman status seems marginal, unless the uncontroverted facts inescapably determine the claimant's status.

**10.** *Pizzitolo*, 812 F.2d at 983 (footnote omitted).

**11.** When making a determination of whether a claimant is "engaged in an occupation expressly enumerated" in the LHWCA, the activity engaged in at the time of the injury should be considered along with the general employment activities.

> The activity of a plaintiff seeking damages under the Jones Act at the time of his injury is only one factor in the *Pizzitolo* analysis of whether or not that individual is engaged in an occupation covered by the LHWCA and thus ineligible for Jones Act benefits.

*Thibodeaux v. Torch, Inc.*, 858 F.2d 1048 (5th Cir.1988).

workers were ineligible for consideration as seamen or members of the crew of a vessel entitled to Jones Act benefits.

## III.

In the instant case, the district court, applying the LHWCA and the holding in *Pizzitolo*, initially determined that Chauvin was an "employee" engaged in "maritime employment" within the meaning of 33 U.S.C. § 902(3).

> The LHWCA sweeps all such employees within its coverage provided such employees meet the situs requirements [of § 903(A)]. If the situs requirements are met, then the individual is a person covered by the Act, unless otherwise excluded by 33 U.S.C. Section 902(3)(A–H). As it relates to seamen, the exclusion of seamen from coverage of the LHWCA is found in Section 902(3)(G) which excludes from the Act's coverage "a master or member of a crew of any vessel".[12]

In determining whether Chauvin was engaged in maritime employment and one of the enumerated occupations, the court looked to Chauvin's activities at the time of the injury. Because Chauvin was promoting the loading and unloading of cargo, the court concluded that his activities fell within the ambit of the LHWCA.[13] Although the district court looked primarily to Chauvin's activities at the time of injury in order to determine his relevant occupation, it also addressed Chauvin's general work activities. The district court realized that, "if we were to utilize the test of Chauvin's activity against his general employment background, he would fall within one of the LHWCA enumerated occupations." Record Vol. 4 at 464. For the two months preceding the accident, only two days were spent engaged in seaman's work; the remaining days were spent on shore conducting vessel repairs. These repairs are an occupation covered by the LHWCA. 33 U.S.C. § 902(3). Chauvin's activities at the time of his injury as well as his general employment require him to be classified as a longshoreman within the meaning of the LHWCA.

## IV.

We cannot say that the district court's determination of Chauvin's status as a longshoreman is clearly erroneous. Both the activity in which Chauvin was engaged at the time of his accident and his general employment background bring him within the enumerated occupations of the LHWCA.[14] Pursuant to *Pizzitolo*, the district court determined that "[b]ecause plaintiff was engaged in an occupation enumerated as covered by the LHWCA, ... he must be deemed to have status as a longshoreman." Record Vol. 4 at 464. Because we do not find this determination to be clearly erroneous, we affirm the judgment of the district court.

AFFIRMED.

---

12. District Court's Findings of Fact and Conclusions of Law, Record Vol. 4 at 462.

13. *See, e.g., Gilliam v. Wiley N. Jackson Co.*, 659 F.2d 54 (5th Cir.1981), *cert. denied sub nom. Wiley N. Jackson Co. v. Director, Office of Workers' Compensation Programs*, 459 U.S. 1169, 103 S.Ct. 813, 74 L.Ed.2d 1012 (1983). After determining that Chauvin was covered by the LHWCA, the district court noted that "*Pizzitolo* squarely holds that if the claimant is engaged in one of the occupations enumerated by the LHWCA ... then, as a matter of law, such a person cannot be a member of the crew of a vessel and is a longshoreman." Record Vol. 4 at 462–63.

14. As we noted at the outset, the analysis applied to cases involving a determination of seaman status has evolved over the years. The addition of the LHWCA has, in some respects, muddied the waters. Arguably, there is a conflict between the *Robison/Barrett* approach and the approach set out in *Pizzitolo*. *Legros v. Panther Services Group, Inc.*, 863 F.2d 345 (5th Cir.1988). This Court has just granted the Petition for Rehearing En Banc filed in *Legros* in order to address this issue. While we have, in the instant case, examined the district court's decision in the context of *Pizzitolo*, and found the result to not be clearly erroneous, we also note that the result would also withstand our scrutiny when looked at through the *Robison/Barrett* lens.