Steven L. **EASLEY**, Plaintiff–Appellant,

v.

**SOUTHERN SHIPBUILDING CORPORATION**, Defendant–Appellee.

No. 91–3021
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 30, 1991.

Rehearing and Rehearing En Banc Denied Aug. 26, 1991.

**840**

Harold M. Wheelahan, III, New Orleans, La., John A.E. Davidson, Metairie, La., for plaintiff-appellant.

David J. L'Hoste, Russell B. Ramsey, Gibbens & L'Hoste, New Orleans, La., for defendant-appellee.

Before JOHNSON, SMITH, and WIENER Circuit Judges.

WIENER, Circuit Judge:

Plaintiff–Appellant Steven L. Easley appeals from the district court's grant of motions for summary judgment and a motion to dismiss filed by the Defendant–Appellee Southern Shipbuilding Corporation (Southern), on the question of Easley's status as a ship repairer/longshoreman or as a seaman. Finding that the district court properly granted summary judgment and dismissed the plaintiff's claim, we affirm.

## I.

## FACTS

Southern is a shipyard in Slidell, Louisiana. In addition to the repair and construction of vessels, Southern performs salvage operations. At the time of his injury, Easley had been employed by Southern for approximately twenty years. For about two and one half years prior to his injury, Easley worked as a mechanic.[1] His duties included repairing land cranes, locomotive cranes, and yard equipment, cutting grass, working in the compressor room, and maintaining Southern's dry dock. In addition to these jobs, Easley occasionally worked as a substitute deckhand aboard the D/B SOUTHERN NO. 6 (the NO. 6), a derrick barge owned by Southern and often used in salvage operations. Easley was injured in May of 1989 while substituting on the NO. 6 for a regular crewman on a one day salvage job in the Mississippi River.

Easley filed suit against Southern, alleging that he was a seaman entitled to coverage under the Jones Act, 46 U.S.C.App. § 688, and that he was injured through Southern's negligence. He also included a claim of unseaworthiness under the general maritime law. Southern filed a motion for summary judgment on the issue of Easley's seaman status, which motion was granted by the district court. The court reasoned that because Easley did not perform a substantial part of his work on a vessel, he was not eligible for seaman status. Easley moved to amend his complaint to clarify his general maritime law claim and to add a negligence action under § 5(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (LHWCA). Southern filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6), or in the alternative for summary judgment, claiming that Easley's exclusive remedy is provided by the LHWCA, but that he was ineligible to file a negligence action under LHWCA § 5(b) because he was a ship repairer or shipbuilder, two classes of employee precluded from proceeding under that section of the Act. The district court granted Southern's motion[2] and denied Easley's motion to amend his complaint. The court reviewed Easley's time sheets, and found that (1) Easley was a ship repairer, a class of workers enumerated within the LHWCA, (2) the LHWCA was his exclusive remedy, (3) as a covered employee under the LHWCA, Easley had no general maritime claim for unseaworthiness, and (4) that as a ship repairer he was excepted from that class of workers who may maintain a negligence action under LHWCA § 5(b) in addition to his claim for compensation. Easley timely appealed the decisions of the district court.

## II.

## STANDARD OF REVIEW

■ This court reviews the grant of summary judgment motions de novo, using

---

1. Prior to his current job assignment, Easley had worked for Southern for years as a deckhand assigned to one or another of the vessels used by Southern in its shipbuilding and salvage operations. Because he desired more family time, early in 1987 Easley asked to be reassigned to land duties. He was made a mechanic, but he agreed to fill in as a deckhand at his employer's convenience. His supervisor recollects that only once during Easley's tenure as a mechanic had he assisted in a salvage operation aboard the NO. 6. Although Easley asserts that he spent as much as eleven per cent of his time during the four months before his injury "aboard his employer's vessels," he does not specify whether he spent that time as mechanic or as deckhand.

2. The district judge granted Southern's motion to dismiss/motion for summary judgment in the alternative. Because the district judge indicated in his opinion that he reviewed evidence in addition to the pleadings, we think the motion should be treated as one for summary judgment.

the same criteria used by the district court in the first instance. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988). We "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving parties." *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir.1986) (per curiam) (citing *Southmark Properties · v. Charles House Corp.*, 742 F.2d 862, 873 (5th Cir.1984)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### III.

### STATUS: SEAMAN OR LONGSHOREMAN

Yet again, this court must decide whether a maritime worker is entitled to compensation benefits or negligence remedies or both; and, if so, which benefits and remedies. Easley claims that he is a seaman entitled to the remedies provided by the Jones Act. In the alternative, he claims that he is a longshoreman entitled both to compensation benefits and to negligence remedies afforded by the LHWCA. Finally, he claims that he is entitled to an action for unseaworthiness under the general maritime law.

The LHWCA applies to any "employee" whose "disability or death results from an injury occurring upon the navigable waters of the United States." 33 U.S.C. § 903. To come within the coverage of the Act, a worker must meet both a "status" and a "situs" requirement. *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985). Situs is not at issue here as Easley was indisputably injured while serving on a vessel which was located

in the Mississippi River at the time of the occurrence.

The "status" test, on the other hand, is crucial to the results of this case. That test seeks to determine if the nature of the employee's work and duties bring him within the ambit of the LHWCA. The LHWCA defines "employee" as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and shipbreaker." § 2(3). It explicitly excludes from this definition, and therefore from coverage under the LHWCA, "a master or member of a crew of any vessel." *Id.* "Member of the crew" is virtually synonymous with "seaman". *See White v. Valley Line Co.*, 736 F.2d 304, 305 (5th Cir.1984). Therefore, anyone who is a "seaman" for Jones Act purposes is a "member of the crew" under the LHWCA, and thus excluded from its coverage.

This court has repeatedly determined that the Jones Act and the LHWCA are mutually exclusive. *Pizzitolo v. Electro-Coal Transfer Corp.*, 812 F.2d 977, 983 (5th Cir.), *reh. denied* 823 F.2d 552 (1987), *cert. denied* 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988). A worker cannot be both a seaman for Jones Act purposes and a longshoreman under the LHWCA. *McDermott Int'l, Inc. v. Wilander*, — U.S. ——, 111 S.Ct. 807, 813, 112 L.Ed.2d 866 (1991).

In the past, this court sought an appropriate framework in which to determine whether a worker is a seaman or a longshoreman. In 1987, with *Pizzitolo*, we resolved the question and settled on an workable analysis: "Although we have on occasion analyzed the question of whether an employee engaged in longshoring or ship repairing was a member of the crew of a vessel ... we are persuaded that such an analysis is unnecessary if the employee is engaged in an occupation expressly enumerated in the [LHWCA]". *Id.* at 983 (footnote omitted).[3] After *Pizzitolo*, when

---

**3.** This court re-examined this framework in

*Leonard v. Dixie Well Service & Supply, Inc.*, 828

defining the status of a maritime worker as either a seaman or longshoreman, we first determine whether the worker is "engaged in an occupation expressly enumerated" by the LHWCA in § 2(3). If he belongs to an enumerated class of workers, he is covered by the LHWCA, so we will normally not inquire into his status as a seaman. *Id.*

Nonetheless, our analysis does not end there. Section 5(b) provides that a worker covered by the LHWCA may also sue a vessel if his injury was caused by the vessel's negligence.[4] However, a person employed to provide shipbuilding, ship repairing, or shipbreaking services cannot proceed against his employer "in whole or in part or directly or indirectly" if the employer was "the vessel's owner, owner pro hac vice, agent, operator, or charterer." § 5(b).

■ Critical to our inquiry, then, is whether Easley is a shipbuilder or ship repairman. "If the employee's permanent duties, or his interim duties over an appreciable period of time, are such that he would be a covered ship repairer within the meaning of § 902(3) of the LHWCA, then he is barred from bringing suit against his employer under § 905(b)." *Gay v. Barge 266*, 915 F.2d 1007, 1010 (5th Cir.1990). Because we conclude that Easley falls within that classification, our analysis need not proceed further. Although, as a shipbuilder or ship repairer, he is a longshoreman under the Act, he is excluded from the additional negligence remedies otherwise available under § 5(b).

True, § 2(3) expressly includes in its definition of "employee" the occupations of ship repairman, shipbuilder and shipbreaker; but, nowhere does it define or otherwise delineate the activities which constitute those occupations. "When making a determination of whether a claimant is 'engaged in an occupation expressly enumerated' in the LHWCA, the activity engaged in at the time of the injury should be considered along with the general employment activities." *Chauvin v. Sanford Offshore Salvage, Inc.*, 868 F.2d 735, 738 n. 11 (5th Cir.1989). *See also Thibodeaux v. Torch, Inc.*, 858 F.2d 1048 (5th Cir.), *reh. denied* 862 F.2d 874 (1988). According to his deposition and his time slips, Easley performed a number of duties in and around the Southern Shipbuilding yard. In just the month before his injury, he worked on locomotive cranes and yard equipment; performed on shore maintenance on a gantry, the dry dock, a work boat, and portable tools; worked in the compressor room; and performed other on shore maintenance chores. His time slips and his position indicate that these were his normal activities over the two and one half years that he worked as a mechanic for Southern. In addition, at the time of his injury Easley had been assigned to substitute as a deckhand on the NO. 6 for but a single day, a type of duty he performed intermittently, at most, when one of the permanent crew members was unavailable.

■ The plaintiff also argues that he is not a shipbuilder or ship repairman because he did not personally build or repair ships. It is not necessary that a worker, however, actually build or repair ships to be included within these classifications. He must only be directly involved in the shipbuilding or repair process. *Alabama Dry Dock and Shipbuilding Co. v. Kininess*, 554 F.2d 176 (5th Cir.), *cert. denied* 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 190 (1977). In *Kini-*

F.2d 291 (5th Cir.1987). We re-confirmed our *Pizzitolo* holding, but indicated that a seaman-status analysis is still appropriate when considering occupations other than those enumerated in § 2(3). *Leonard*, 828 F.2d at 296. The following year we decided *Legros v. Panther Services Group, Inc.*, 863 F.2d 345 (5th Cir.1988), in which we modified the *Pizzitolo* framework to again include a seaman-status analysis under appropriate circumstances. The *Legros* decision, however, was vacated when we granted suggestion of rehearing *en banc. Legros*, 863

F.2d at 355. The appeal was later dismissed on motion of one of the parties. *See Legros v. Panther Services Group, Inc.*, 874 F.2d 953 (5th Cir.1989). Because the original *Legros* opinion was vacated, *Pizzitolo* remains the law of this circuit.

4. If the vessel owner is the longshoreman's employer, the employee may sue only if the employer was negligent in his capacity as vessel owner. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 530, 103 S.Ct. 2541, 2547, 76 L.Ed.2d 768 (1983).

*ness* the plaintiff was injured while sand-blasting rust from parts of an unassembled crane. Once assembled, the crane itself would be directly involved in the shipbuilding process. Because the injured worker's activity was a necessary prerequisite to the crane's use, the worker was found to be directly involved in the shipbuilding process. *Id.* at 178. *See also Alford v. American Bridge Div., United States Steel Corp.,* 642 F.2d 807, 812–13 (5th Cir.), *modified in part* 655 F.2d 86 (1981), *cert. denied* 455 U.S. 927, 102 S.Ct. 1292, 71 L.Ed.2d 472 (1982); *Ingalls Shipbuilding Corp. v. Morgan,* 551 F.2d 61, 62 (5th Cir.), *cert. denied* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977).

The district court was correct in concluding that Easley was a ship repairman as a matter of law. As a mechanic who repaired and maintained equipment used in the shipbuilding and repair process he supported those who actually built and repaired ships. Clearly, Easley's duties directly furthered the shipbuilding or ship repair process. Therefore, he is a shipbuilder or repairer for purposes of the LHWCA.

Easley further argues that (1) he cannot be a shipbuilder or ship repairman because many of his principal duties were so far removed from the process that he could not possibly be considered directly involved, and (2) at the time of his injury, he was engaged as a deckhand on the NO. 6 and was therefore totally removed from the shipbuilding/repair process. Both of these arguments fail. It is well settled in this circuit that the measure of longshoreman status is the character of the employee's work taken as a whole, not in piecemeal time increments or in distinct but temporary job assignments.[5] We examine not just the work in which he was engaged at the moment of his injury, but the entirety of his duties. *Gay v. Barge 266,* 915 F.2d 1007, 1010 (5th Cir.1990). Furthermore,

> [f]ocusing solely on the employee's activity at the time of injury might bar suits by a whole host of workers in other maritime occupations who are injured while temporarily performing repair work.... [T]o deny [the plaintiff] a cause of action in the morning but to grant him one in the afternoon is to make his rights under the ACT as random and indiscriminate as the sea herself.

*Id.* at 1010–11. *See also Burks v. American River Transp. Co.,* 679 F.2d 69 (5th Cir.1982).

This view is consistent with our approach in seaman-status cases under the Jones Act and "member of the crew" cases under the LHWCA. In those cases we look to the context of the work performed aboard vessels within the larger sphere of the worker's assignment with his employer. *See Lormand v. Superior Oil Co.,* 845 F.2d 536, 540 (5th Cir.1987), *cert. denied* 484 U.S. 1031, 108 S.Ct. 739, 98 L.Ed.2d 774 (1988); *Barrett v. Chevron, U.S.A.,* 781 F.2d 1067, 1076 (5th Cir.1986).[6] If we were to analyze Easley's assignment with respect to seaman status instead of longshoreman status, we would be forced to the same conclusion even accepting the plaintiff's argument that he was a "regular" substitute deckhand. Easley's sporadic

---

5. Only when his permanent job assignment has changed during the course of his employment is a worker entitled to have the substantiality of his vessel-related work evaluated for a period less than the total time employed by his current employer. *Lormand v. Superior Oil Co.,* 845 F.2d 536, 540 (5th Cir.1987). Easley presented no evidence that his permanent job assignment changed from mechanic to deckhand. He argued instead that he had two distinct and separate jobs at Southern—mechanic and "regular substitute deckhand." However, Easley presented no evidence that his job classification changed, that he was paid separately, or that he was distinguished in any other way when he was intermittently assigned to work aboard the NO. 6. In fact, the record indicates that his deckhand time was accounted for in the same way as was the time when he was performing his other duties, and that he was paid his standard wage regardless of the type of work he performed during the pay period.

6. A seaman does not lose his status as a seaman simply because he is temporarily assigned to shore duty. *Smith v. Odom Offshore Surveys, Inc.,* 791 F.2d 411 (5th Cir.1986). Likewise, a longshoreman does not lose his status as a longshoreman simply because he was assigned deckhand duties intermittently.

and intermittent assignments to Southern's vessels simply were not substantial in the context of his employment.[7] Moreover, with the exception of his occasional deckhand assignments, we see nothing in the record that would distinguish any of his activities as clearly non-ship repair under the standards set forth in *Kininess* and the cases cited above.

Easley's position is similar to that of the plaintiff in *Chauvin v. Sanford Offshore Salvage, Inc.*, 868 F.2d 735 (5th Cir.1989). Chauvin normally worked in his employer's salvage yard and assisted in the repair of his employer's salvage barge. When the barge performed offshore salvage work, Chauvin was assigned to it. 868 F.2d at 736. In the two months prior to his injury, he had spent only two days doing seaman's work. *Id.* at 739. At the time of his accident, Chauvin was helping transport equipment to another salvage barge. *Id.* at 736–37. Even though the court found that Chauvin was engaged in longshoring duties at the time of his injury, the court reasoned that "'if we were to utilize the test of Chauvin's activity against his general employment background, he would fall within one of the LHWCA enumerated occupations.'.... Chauvin's activities at the time of his injury as well as his general employment require him to be classified as a longshoreman within the meaning of the LHWCA." *Id.* at 739 (quoting the district court's opinion).

We find that because a substantial amount of his work contributed to the shipbuilding/repair process, Easley was a shipbuilder or ship repairman. As a member of an occupation enumerated in § 2(3), Easley is a covered worker but is limited to those compensation remedies to which all covered workers are entitled under the LHWCA. As a shipbuilder or ship repairman, he may not maintain an action for negligence against his employer or the vessel.

## IV.

## GENERAL MARITIME LAW CLAIM

■ In 1972 Congress enacted § 5(b) of the LHWCA which overruled the Supreme Court's holding in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). *Sieracki* allowed longshoremen a cause of action for unseaworthiness against a vessel owner. Section 5(b) expressly eliminated the unseaworthiness action for all employees covered by the LHWCA. *McDermott Int'l, Inc. v. Wilander*, — U.S. ——, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). Because Easley is a covered employee under the LHWCA, he is not entitled to any remedies stemming from the warranty of seaworthiness. His remedies will only be found within the four corners of the LHWCA.

## V.

## CONCLUSION

Easley's duties and recent work record clearly show that he was directly involved with the shipbuilding or ship repair process. As a shipbuilder/ship repairman, Easley is a member of a class of workers specifically enumerated as falling within the ambit of the LHWCA. As a longshoreman he may not bring an action for unseaworthiness under the general maritime law or for negligence under the Jones Act. Furthermore, as a shipbuilder/ship repairman, Easley is prohibited from bringing an action for negligence against the vessel or his employer as shipowner under LHWCA § 5(b). So, because he is a shipbuilder or ship repairman, Easley's recovery under the LHWCA is limited to compensation benefits to the extent he is eligible for them.

AFFIRMED.

---

**7.** Even had Easley performed a substantial portion of his work aboard vessels, he cannot be a seaman because, we find, he is a member of an enumerated classification under the LHWCA. *See Pizzitolo*, 812 F.2d 977 (5th Cir.1987).