· **Jon HEISE, Plaintiff–Appellant,**

v.

**The FISHING COMPANY OF ALASKA, INC., A Washington Corporation; Alaskan Ranger, her engines, tackle, gear, equipment, and appurtenances, Defendants–Appellees.**

No. 95–35194.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1995.

Decided March 19, 1996.

Charles W. Ray, Jr., Anchorage, Alaska, for plaintiff-appellant.

Steven E. Mulder, Bogle & Gates, Anchorage, Alaska, for defendants-appellees.

Before FLETCHER, KOZINSKI, and LEAVY, Circuit Judges.

FLETCHER, Circuit Judge:

Jon Heise appeals from the district court's grant of summary judgment to the Fishing Company of Alaska (FCA). The district court held (1) that Heise was not a seaman and therefore not entitled to remedies available under the Jones Act and (2) that the Longshore and Harbor Workers' Compensation Act (LHWCA) barred his suit for negligence against FCA. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## FACTUAL BACKGROUND

FCA owns and operates several fishing vessels, including the *Alaska Ranger*. In November 1989, the *Alaska Ranger* completed its work for the fishing season and put in at Seward, Alaska for repairs and annual maintenance. Most crew members departed, though some officers, engineers and supervisors remained to conduct the repairs and maintenance together with temporary work-

ers and specialist contractors. The repairs were to include rebuilding the main engines, which had been damaged by water in the fuel, and rewelding a crack in the fuel tank.

FCA's personnel manager hired Heise as a temporary laborer, assigned to the category of "assistant engineer" to be paid $15 per hour. Heise, who had never previously worked on a seagoing vessel, did not complete an employment application or sign an employment contract. Heise travelled from Anchorage to Seward to take the job and was allowed to sleep on the vessel since he was from out of town and most of the crew quarters were empty. Heise began work on December 11, 1989; he figured that the job would last about a month, given the extent of the work to be done. However, he hoped he would be able to stay with the ship when she sailed.

At a point in the repairs when the *Alaska Ranger*'s engines were disassembled, she was moved by tug alongside a sister ship, the *Alaska I,* so that equipment on the latter vessel could be used in repairing the former. On December 22, after use of the *Alaska I* equipment was completed, a tug moved the *Alaska Ranger* back to her original location. Heise and another temporary worker received and secured the vessel's mooring lines on board the vessel. At the end of the process, Heise complained of severe back pain. FCA made arrangements for him to see a local doctor later that day, and the doctor ordered Heise to rest for a week. FCA put Heise up at a local hotel for the week. At the end of the week, Heise sought to return to work but FCA denied him further employment.

On January 6, 1990, work on the *Alaska Ranger* was completed and she underwent sea tests; the next day she departed for her first fishing run of the year.

### PROCEEDINGS BELOW

Heise filed a complaint against FCA in the district court seeking compensatory and punitive damages for FCA's alleged breaches of its duties of care and for unseaworthiness under the Jones Act, 46 U.S.C.App. § 688(a). Alternatively, Heise sought damages for negligence under the Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 905(b).[1]

After discovery, FCA moved for summary judgment, arguing that as a matter of law Heise was not a seaman entitled to remedies under the Jones Act and that the LHWCA barred his negligence claims. The district court granted summary judgment, finding that undisputed facts established that Heise was hired for land-based work, not sea-based maritime work, and consequently was not a seaman entitled to remedies under the Jones Act. As to Heise's negligence claims under the LHWCA, the court held as a matter of law that the Act bars an employee's suit against his immediate employer and hence barred Heise's suit against FCA.

### STANDARD OF REVIEW

■ A grant of summary judgment is reviewed de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995).

■ The Supreme Court, in its most recent statement of the definition of "seaman" under the Jones Act, reiterated that "the question of . . . who is a 'seaman[ ]' is a mixed question of law and fact". *Chandris, Inc. v. Latsis,* ––– U.S. –––, –––, 115 S.Ct. 2172, 2190, 132 L.Ed.2d 314 (1995). *See Boy Scouts of America v. Graham,* 76 F.3d 1045, 1047 (9th Cir. 1996). "It is for the court to define the statutory standard. . . . The jury finds the facts and, in these cases, applies the legal standard . . . If reasonable persons, applying the proper legal standard, could differ as to whether the employee was a [seaman], it is a question for the jury." *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991). While "[t]he inquiry into seaman status is of necessity fact specific", "summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion". *Id.*

---

1. Heise has also filed a claim for compensation under the LHWCA with U.S. Department of Labor.

## DISCUSSION

### I. Seaman Status

■ The Jones Act provides a cause of action to a seaman for personal injuries sustained in the course of employment but does not define the term "seaman". The Supreme Court, after frequent early attempts to clarify the meaning of the term, said nothing on the issue between 1958 and 1991. In the past five years, it has twice undertaken to make "some sense of the confusion left in [the] wake" of its earlier cases and the lower courts' cases they spawned. 498 U.S. at 353, 111 S.Ct. at 816. The Court has now clarified that

> the essential requirements for seaman status are twofold. First, ... "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" ... Second, ... a seaman must have a connection to a vessel in navigation ... that is substantial in terms of both its duration and its nature.

*Chandris,* —— U.S. at ——, 115 S.Ct. at 2190 (quoting *Wilander,* 498 U.S. at 355, 111 S.Ct. at 817–18). The Ninth Circuit has applied the *Chandris* formula in *Boy Scouts,* 76 F.3d at 1047–49. *See also Papai v. Harbor Tug and Barge Co.,* 67 F.3d 203, 205 (9th Cir. 1995). The *Chandris* court "focus[ed] upon the essence of what it means to be a seaman and ... eschew[ed] the temptation to create detailed tests ... that tend to become ends in and of themselves". —— U.S. at ——, 115 S.Ct. at 2190. Instead, the Court stressed that

> "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." ... [T]he ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

*Id.* at ——–——, 115 S.Ct. at 2190–91 (citations omitted). Because Heise was a land-based employee while working on the *Alaska Ranger,* he is not a seaman entitled to the remedies of the Jones Act.

In *Chandris,* the Court explained that the first requirement for seaman status was that "'an employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission"'". *Id.* at ——, 115 S.Ct. at 2190 (quoting *Wilander,* 498 U.S. at 355, 111 S.Ct. at 817 (quoting *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959))). The Court explained that "this threshold requirement is very broad: '[a]ll who work *at sea* in the service of a ship' are *eligible* for seaman status". *Id.* at ——, 115 S.Ct. at 2190 (quoting *Wilander,* 498 U.S. at 354, 111 S.Ct. at 817) (first emphasis added).

■ Despite the breadth of the threshold, Heise has not raised a genuine issue of material fact as to whether he crossed it. The requirement that a seaman "work *at sea* in the service of a ship" embodies the first basic principle of the definition of "seaman" that *Chandris* identified: "'[S]eamen do not include land-based workers.'" *Id.* at ——, 115 S.Ct. at 2185 (quoting *Wilander,* 498 U.S. at 348, 111 S.Ct. at 814). Thus, "land-based maritime workers injured while on a vessel in navigation remain covered by the LHWCA ... [and] do not become seamen because they happen to be working on board a vessel when they are injured." *Id.* at ——, 115 S.Ct. at 2186. Heise was a land-based worker. FCA hired Heise only as a temporary laborer and only for the duration of the repairs and maintenance in Seward on the *Alaska Ranger.* He did not sign the ship's articles. He stated in his deposition that, while he "was hoping" to continue working on the ship after the repairs were completed, no one ever told him he would; while he stated that the captain suggested "there would be a good chance that [he] could stay on", he admitted that neither the captain nor anyone else had made any promises on that subject and that the suggestions about the possibility of his staying on (both by the captain and by his supervisor) were premised *both* on his performing well *and* on the ship having an open position in which it could use him. Thus, at the time of Heise's injury, his connection to the *Alaska Ranger* was to be limited to the time that the vessel was in Seward undergoing maintenance and repairs. The fact that *if* Heise performed well he *might* be hired to work on the ship when it

left Seward *if* there were jobs available does not change his land-based status at the time the injury occurred. *Cf. Desper v. Starved Rock Ferry Co.*, 342 U.S. 187, 191, 72 S.Ct. 216, 218, 96 L.Ed. 205 (1952) ("[T]he law does not cover probable or expectant seamen but seamen in being."). Because Heise was a land-based worker, he was not a seaman entitled to the remedies of the Jones Act.

## II. Longshore & Harbor Workers Compensation Act § 5(b)

■ Heise alternatively claims against his employer under the LHWCA, 33 U.S.C. § 901 *et seq.*, which provides statutory liability for compensation against the employer. Section 905(b) allows an employee covered by the LHWCA to sue a vessel whose negligence injures the employee, but bars all such negligence actions against vessels where (1) the employee was hired to provide shipbuilding, repairing, or breaking services, and (2) the employer was the "owner, owner pro hac vice, agent, operator, or charterer of the vessel". The district court granted summary judgment to FCA because it held that under § 905(b), "an employee covered by the Act may not sue his immediate employer for negligence".

We need not determine whether the district court was correct in concluding that § 905(b) bars *all* employees from suing an immediate employer in the employer's capacity as a vessel.[2] The district court's grant of summary judgment in this case was proper because Heise "was employed to provide . . . repairing . . . services" and therefore the

third sentence of § 905(b) bars a negligence action by Heise "in whole or in part or directly or indirectly, against [his] employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer)".

We have not previously considered when an employee "was employed to provide . . . repairing . . . services" for § 905(b) purposes, but a number of Fifth Circuit decisions address that question. In *New v. Associated Painting Services, Inc.*, 863 F.2d 1205 (5th Cir.1989), the court held that

> "repair" in § 905(b) must be given its ordinary meaning, "to restore to a sound or healthy state." . . . [I]f [the worker] is hired to restore a vessel to safe operating condition, he has been hired to perform "repairing . . . services" under § 905(b). If, however, he is hired to preserve the vessel's current condition, he is performing routine maintenance not covered by the section.

*Id.* at 1210 (footnotes omitted). The court noted that if proper evidence had supported the defendant's claims that the ship had been at sea for many months, that the paint had severely deteriorated, and that various parts of the structure were rusty, it would have found as a matter of law that the plaintiff's painting and sandblasting constituted repair under § 905(b). In *Gay*, the court explained further that

> [w]hen classifying an employee for purposes of determining whether a suit under § 905(b) is barred, we look not only at

2. *Guilles v. Sea–Land Service, Inc.*, 12 F.3d 381 (2d Cir.1993), "h[e]ld that those maritime workers covered by the LHWCA have under § 905(b) a cause of action for negligence against vessel owners even if the vessel is owned by the worker's employer, subject to" the express limitations in the subsection. The Fifth Circuit has also held that "the § 905(b) bar is specific to the occupations listed: shipbuilders, ship repairers and ship breakers. Had Congress intended to foreclose suits by all covered employees against employer-shipowners, it could easily have done so. It did not." *Gay v. Barge 266*, 915 F.2d 1007, 1010 (5th Cir.1990). *See also Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 530–31, 103 S.Ct. 2541, 2547–48, 76 L.Ed.2d 768 (1983); *Morehead v. Atkinson–Kiewit, J/V*, 75 F.3d 736, 739–41 (1st Cir. 1996) ("The [1984] Amendments did not purport to prohibit LHWCA employees other

than in the described categories from suing for negligence in dual capacity cases."); *Fanoli v. Sea–Land Servs., Inc.*, 251 N.J.Super. 443, 598 A.2d 911 (App.Div.1991), *cert. denied*, 505 U.S. 1220, 112 S.Ct. 3031, 120 L.Ed.2d 901 (1992). These decisions are in conflict with dicta in one opinion in *Bush v. Eagle–Picher Industries, Inc.*, 927 F.2d 445 (9th Cir.1991). Although that opinion asserted that the language of § 905(b), as amended in 1984, operates to bar suits against "dual capacity" vessels or shipyards by injured LHWCA employees, the opinion noted that the 1984 amendments had been prospective only and the conduct at issue in the case before it had occurred before the amendments took effect. Thus, the *Bush* court itself concluded that "the amendment has no bearing on this case". *Id.* at 449.

what the employee was doing at the moment he was injured. We also look at whether the employee "regularly performs some portion of what is indisputably [ship-repair] work," or has been assigned for an appreciable period of time to do "substantial [ship-repair] work ... even though his assignment to it is not 'permanent' ". 915 F.2d at 1010 (emendations and omissions in original) (footnotes omitted). In *Easley v. Southern Shipbuilding Corp.*, 936 F.2d 839 (5th Cir.1991), *vacated and remanded*, 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed.2d 610 (1992), *aff'd*, 965 F.2d 1 (5th Cir.1992), *cert. denied*, 506 U.S. 1050, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993), the court added that "[i]t is not necessary that a worker ... actually build or repair ships to be included within these classifications. He must only be directly involved in the shipbuilding or repair process." 936 F.2d at 843 (citations omitted). Therefore "a mechanic who repaired and maintained equipment used in the shipbuilding and repair process ... supported those who actually built and repaired ships [and] directly furthered the shipbuilding or ship repair process" and therefore, as a matter of law, the mechanic was a ship repairer for purposes of §§ 902(3) and 905(b). *Id.*

We adopt the Fifth Circuit's construction of § 905(b)'s "employed to provide ... repairing ... services" language. Under that definition, summary judgment for FCA was proper, as Heise did not raise a genuine issue of material fact as to whether he was employed to provide repair services. He argues that he performed a multitude of jobs and that the work done was fundamentally "year-end maintenance", even if "certain items were contemporaneously 'repaired' during the maintenance process". It is clear, however, that Heise was hired to participate in efforts "to restore [the *Alaska Ranger*] to a safe operating condition" rather than "to preserve [her] current condition". *New*, 863 F.2d at 1210. Heise himself testified that the work to be done included rebuilding the main engine and welding cracked fuel tanks, and characterized the work as "a major overhaul". As to the type of work he actually performed, Heise testified that it was "all kinds of work" and specifically included "clean[ing] fuel tanks, rebuil[ding] the main engines, on the ship, mostly mechanical work". Even the task he was performing when his back injury occurred, securing the vessel in place after it was towed back from its position alongside its sister vessel, was in furtherance of the repair process within the meaning of *Easley*, since the *Alaska Ranger* had only been moved alongside the *Alaska I* in order to make equipment on the latter vessel available for repair work on the former. Thus, it is undisputed that Heise "regularly perform[ed] some portion of what is indisputably [ship-repair] work" and was "assigned for an appreciable period of time to do substantial [ship-repair] work". *Gay*, 915 F.2d at 1010. Therefore, § 905(b) bars his negligence action against FCA.

### CONCLUSION

Because Heise has not created a genuine issue of material fact as to his status as a seaman under the Jones Act, and because 33 U.S.C. § 905(b) bars his negligence claim against FCA, the judgment of the district court is

**AFFIRMED.**