Brian Louis DELANGE,
Plaintiff–Appellant,

v.

DUTRA CONSTRUCTION, CO., INC., In Personam; Chromalloy American Corporation, In Personam; Janet C, O.N., the tug, her equipment, and appurtenances; In Rem; Doe Pontoon Barge, her equipment, and appurtenances; In Rem, Defendants–Appellees.

No. 96–17270.

United States Court of Appeals,
Ninth Circuit.

Submitted May 8, 1998.[1]

Memorandum filed March 16, 1999.

Opinion and Order filed June 11, 1999.

---

1. The panel finds this case appropriate for submission without oral argument pursuant to Fed. R.App. P. 34(a).

Jay Lawrence Friedheim, Admiralty Advocates, Honolulu, Hawaii, for the plaintiff-appellant.

Glenn N. Taga, Gronau Choy & Taga, Honolulu, Hawaii, for the defendants-appellees.

Before: BROWNING, BRUNETTI, and RYMER, Circuit Judges.

## ORDER

The request for publication is granted. The Memorandum filed March 16, 1999, is redesignated as a per curiam opinion.

## OPINION

PER CURIAM.

Brian Louis Delange ("Delange") appeals the district court's grant of summary judgment for Dutra Construction Co., Inc. ("Dutra"). We affirm in part, reverse in part, and remand.

### I.

Dutra hired Delange out of a carpenter's union as a carpenter. His actual duties included mechanical work, welding, carpentry, supply runs, and occasionally pile-driving. Delange was not permanently or regularly assigned to the crew of a barge or tug used in Dutra's construction projects, but when a barge was being moved Delange occasionally performed work typically done by deckhands, securing and stowing cargo, handling lines, and serving as a lookout. On one occasion, Delange piloted a tug.

On the day Delange was injured, he was assigned to a piledriving crew engaged in the construction of a navigation aid. He and a co-worker, Jess Jackson, rode to the construction site on a barge to be used as a work platform. The barge was towed by a tugboat.

Delange was responsible for keeping the barge's equipment secure while the barge was in transit. When the barge arrived at the construction site, the captain ordered Delange and Jackson to release a "spud"—a cylindrical anchoring device dropped through an opening in the deck of the vessel by removing pins passing horizontally through the spud. Jackson used a winch to lift the spud slightly to permit removal of the pins. Delange encountered difficulty while attempting to remove one of the pins, and signaled Jackson to lower

the spud. Delange's fingers were crushed when the spud descended.

 Delange brought suit against Dutra under the Jones Act and the Longshore Harbor Workers Compensation Act ("LHWCA"). The district court granted summary judgment for Dutra on both claims. We affirm summary judgment for the defendant on the LHWCA claim, but remand the Jones Act claim for further proceedings.[2]

## II.

 The Jones Act provides a remedy for "any seaman" injured "in the course of his employment." 46 U.S.C. § 688. The issue of seaman status under the Jones Act "is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997). Summary judgment is appropriate only if "the facts and the law will reasonably support only one conclusion." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991).

 A plaintiff is a Jones Act seaman only if (1) his duties contribute to the function of the vessel or to the accomplishment of its mission, and (2) he has a connection to a vessel in navigation that is substantial both in duration and in nature. *See Cabral v. Healy Tibbits Builders, Inc.*, 128 F.3d 1289, 1292 (9th Cir.1997) (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995)). The district court found that Delange failed to satisfy either requirement.[3] We conclude that Delange raised a triable issue of fact as to his status as a seaman and remand for further proceedings.

### A.

Relying on *Heise v. Fishing Co. of Alaska, Inc.*, 79 F.3d 903 (9th Cir.1996), the district court determined that Delange failed to satisfy the requirement that his duties contributed to the function of the vessel or to the accomplishment of its mission because the ultimate purpose of his work was to perform tasks relating to construction, not to contribute to the function of the tug or the barge. *Heise* involved a worker hired "only as a temporary laborer and only for the duration of the repairs and maintenance" of a fishing vessel, who was injured on the vessel while receiving and securing the vessel's mooring lines. *See id.* at 905–06. *Heise* acknowledged that the requirement that the employee's duties contribute to the function of the vessel or to the accomplishment of its mission was "very broad," but none-

---

**2.** Dutra challenges the district court's implicit finding that Delange did not violate District Court of Hawaii Local Rule 56.1, which requires a party opposing summary judgment to file a separate, concise statement of triable issues of fact. *See* D. Haw. R. 56.1(b)(2). District courts "have broad discretion in interpreting and applying their local rules." *Miranda v. Southern Pac. Transp.*, 710 F.2d 516, 521 (9th Cir.1983). We find no error in the district court's ruling. Although Delange did not include a separate, concise statement of facts with his brief opposing summary judgment, his brief itself was sufficiently short and clear to enable the district court to decide Dutra's summary judgment motion efficiently. Accordingly, Delange's brief was consistent with the principal policy underlying Rule 56.1: to obviate the need for the court to scour the record for facts in support of or against summary judgment. *See* D. Haw. R. 56.1(f).

**3.** Ordinarily, in determining whether a plaintiff had seaman status under the Jones Act, we would first consider whether the barge qualified as a "vessel in navigation." *See Wilander*, 498 U.S. at 356, 111 S.Ct. 807 (seaman status "will depend on the nature of the vessel and the employee's precise relation to it"). Dutra did not raise this issue on summary judgment and the district court did not reach it. We have discretion to address an issue not raised below in limited circumstances, including " 'when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.' " *International Ass'n of Indep. Tanker Owners v. Locke*, 148 F.3d 1053, 1063 (9th Cir.1998) (quoting *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985)). Those circumstances are not present here. We therefore do not reach the issue.

theless concluded that the plaintiff was a "land-based worker" who did not qualify for seaman status under the Jones Act. *See id.* at 906–07.

Unlike the plaintiff in *Heise,* however, Delange worked directly " 'in the service of a ship.' " *Chandris,* 515 U.S. at 368, 115 S.Ct. 2172 (quoting *Wilander,* 498 U.S. at 354, 111 S.Ct. 807). He served in various deckhand capacities while the barge was being moved and also assisted in the pile-driving carried out from the barge. A jury could reasonably conclude from this evidence that Delange contributed to the barge's mission. *See Cabral,* 128 F.3d at 1292 (the plaintiff's duties as a crane operator "unquestionably contribute[d] to Barge 538's function as a crane barge").

### B.

The district court concluded that Delange was a land-based worker, not a member of the barge's crew, which is the "ultimate inquiry" in determining whether his connection to the barge was substantial in duration and nature. *See Chandris,* 515 U.S. at 370, 115 S.Ct. 2172.

█ A maritime worker's connection to vessel in navigation is substantial if his duties are inherently vessel-related and thus "take him to sea." *Papai,* 520 U.S. at 555, 117 S.Ct. 1535. *Papai* held that a Jones Act plaintiff who had been hired to perform a one-day painting job aboard a tug established "the sort of 'transitory or sporadic' connection to a vessel or group of vessels that ... does not qualify one for seaman status." *Id.* at 560, 117 S.Ct. 1535 (quoting *Chandris,* 515 U.S. at 368, 115 S.Ct. 2172). Similarly, this court recently held that a crane operator working aboard a crane barge did not satisfy the substantial connection test because his work was not "primarily sea-based": he was hired as a crane operator and not as a crew member, worked on the vessel (a specialized barge) only when it was stationary, and failed to show that he would continue to work on the barge after the project was completed. *See Cabral,* 128 F.3d at 1293.

Unlike the plaintiffs in *Papai* and *Cabral,* Delange stated in his affidavit that during his five-month employment with Dutra, "a big part" of his job was to serve as a lookout, cargo stower, line handler, and occasional pilot when the barge was being moved-all of which are clearly seaman's duties-and only devoted 10% of his time to carpentry. He also stated that more than 80% of his time was spent onboard the barge, where "most" of the work involved crewman and deckhand duties. Although the barge moved only four times during that period of time, "[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of the crew,' it is a question for the jury." *Wilander,* 498 U.S. at 356, 111 S.Ct. 807; *see also Chandris,* 515 U.S. at 369, 115 S.Ct. 2172 ("[t]he jury should be permitted, when determining whether a maritime employee has the requisite employment-related connection to a vessel in navigation to qualify as a member of the vessel's crew, to consider all relevant circumstances bearing on [seaman status]"); *Foulk v. Donjon Marine Co., Inc.,* 144 F.3d 252 (3d Cir.1998) (commercial diver injured while working from crane barge raised triable issue of fact regarding connection to vessel where injury occurred during first day of service on ten-day contract).

Because a jury could reasonably conclude that Delange contributed to the barge's mission, and that his connection to the barge was substantial in terms of both its duration and its nature, Delange has raised disputed issues of material fact which preclude summary judgment.

### III.

█ The LHWCA establishes a worker's compensation regime for workers injured while "engaged in maritime employment." 33 U.S.C. § 902(3). Longshoremen injured on the job are entitled to recover compensation and benefits from their employers, *see* 33 U.S.C. § 904(a), and Delange has already received such

benefits. A longshoreman also may sue the operator of the vessel on which he was injured for negligence. *See* 33 U.S.C. § 905(b). Delange contends his claim for negligence should have been submitted to a jury. We disagree.

The only duty at issue in this case is Dutra's duty to turn over the barge in a reasonably safe condition, or its "turnover duty." *See Scindia Steam Navigation Co., Ltd. v. De Los Santos,* 451 U.S. 156, 167–78, 101 S.Ct. 1614 (1981); *Howlett v. Birkdale Shipping Co., S.A.,* 512 U.S. 92, 98, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994). The turnover duty has two distinct components. First, a vessel operator must exercise ordinary care to turn over the vessel and its equipment in such condition that experienced longshoremen reasonably conducting their operations will not be injured. *See Scindia,* 451 U.S. at 167, 101 S.Ct. 1614. Second, an operator must warn the longshoremen of any hazards on the ship that are known to it or should be known to it in the exercise of reasonable care. *See id.* The duty to warn attaches only to hazards "that are not known by the [longshoreman] and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." *Id.*

Delange contends the accident that severed his fingers was caused by a hidden defect in the barge's spud mechanism. In particular, Delange maintains that he had difficulty removing the pin because it was bent, a defect he could not have identified in time to avoid the accident because the pin was hidden in the spud.

Because Dutra introduced evidence that the captain found no problems during an inspection of the barge and the tug on the morning of the accident, Delange was required to offer evidence of specific facts showing his negligence claim was triable. *See* Fed.R.Civ.P. 56(e). Further, where, as here, the nonmoving party relies only on his own affidavit to oppose summary judgment, "[he] cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen*

*v. United States,* 7 F.3d 137, 138 (9th Cir.1993).

Delange averred the pin was bent, but introduced no evidence showing Dutra was aware of that fact, or would have discovered it by making a reasonably careful inspection. The mere assertion that the pin was bent, without a showing of specific facts supporting negligence on the part of Dutra, amounts to a claim that the barge was unseaworthy, a strict liability action not cognizable under section 905(b). *See* 33 U.S.C. § 905(b) ("The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred"); *Bilderbeck v. World Wide Shipping Agency,* 776 F.2d 817, 818 (9th Cir.1985) (explaining that under section 905(b), "[t]here is no warranty ... running to the workman, that the vessel is free from defect"); *Subingsubing v. Reardon Smith Line, Ltd.,* 682 F.2d 779, 780 (9th Cir.1982). Delange also contends he was injured because there were no handles on the spud pin, but submitted no evidence that Dutra acted negligently in using pins without handles.

## IV.

Because Delange raised a triable issue of fact with respect to his Jones Act claim, the district court improperly granted Dutra summary judgment; with respect to the LHWCA claim, however, summary judgment was properly granted. As stated in an order filed March 19, 1999, each party shall bear its own costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**