**The Estate of Joseph McGOUGH, Charles Capron, Roy Cameron, Malek Afshari, Everett Richardson, and Ronald May, Plaintiffs–Appellants,**

v.

**Lockheed MARTIN, fka Lockheed Environmental Systems and Technologies, a Nevada Corporation, John Does I through V, and DOE Corporation VI through X, Defendants–Appellees.**

No. 99–17164.
D.C. No. CV–S–96–00765–JLQ.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 20001.

Decided March 20, 2001.

their failure to do so is not reckless disregard").

6. *United States v. Meling*, 47 F.3d 1546, 1554 (9th Cir.1995).

466

Before B. FLETCHER, FERNANDEZ, and PAEZ, Circuit Judges.

## MEMORANDUM *

We must decide whether the district court was correct to grant summary judgment to the defendant on each plaintiff's claim of age discrimination in violation of the Age Discrimination in Employment Act. Because we conclude that none of the plaintiffs provided sufficient evidence to permit a rational jury to find in his favor, we affirm.

## BACKGROUND

Lockheed Environmental Systems and Technologies ("LESAT") was an environmental management company and a subsidiary of the Lockheed Martin Corporation.[1] At the time of the events that are relevant to this litigation, LESAT was

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. The parties are familiar with the facts of this case. We recite only those facts which are necessary to explain our decision.

composed of three divisions, two of which were the Technologies Application Division ("TAD") and the Environmental Services Division ("ESD"). Four of the plaintiffs in this litigation (Ronald May, Charles Capron, Joseph McGough, and Malek Afshari) worked for TAD. The remaining two plaintiffs (Roy Cameron and Everett Richardson) worked for ESD. In a complaint filed in the district court for the District of Nevada, all six plaintiffs allege that LESAT discriminated against them on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. The district court granted LESAT's motions for summary judgment as to each plaintiff's claim. The district court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

## A. TAD Employees

In 1991, TAD made a bid for a contract with the United States Department of Energy ("DOE") to clean up Pit 9, a hazardous waste site in Idaho. The contract had two phases. The first involved a showing by the party winning the contract that its technology could be used to clean the site. The second, more lucrative phase was the actual clean up. DOE awarded the Phase I contract to TAD in 1992. In 1994, after TAD had successfully demonstrated the efficacy of its cleaning technology, DOE awarded the division the Phase II contract. After TAD obtained the Phase II award, LESAT management announced that TAD would relocate from Nevada to Idaho. LESAT management sent TAD employees a memorandum stating that the move to Idaho "means everyone in TAD will be affected, obviously some more than others. Some personnel will be offered a chance to move to Idaho and some will not." In preparation for the transition, Frank Crimi, the head of the TAD transition team, Edward Brown, the Vice President of Technical Operations for LESAT, and Kirk McKinley, the Pit 9 program manager, met on various occasions to discuss what positions would be created in Idaho and which of TAD's current employees would be offered those positions. Three of the four TAD plaintiffs (Capron, McGough, and Afshari) were not offered jobs in Idaho. The fourth (May) was offered and took a job in Idaho, from which he later voluntarily resigned.

## B. ESD Employees

The Environmental Services Division ("ESD") is another division of LESAT. ESD provided services monitoring and assessing environmental conditions. Its main customer was the United States Environmental Protection Agency ("EPA"). The funding for positions within ESD came directly from contracts with customers. Loss of a contract therefore meant loss of the jobs associated with the contract. Two of the contracts ESD had with EPA were the Environmental Monitoring Research and Development Contract ("EMR & D") and the Remote Sensing Contract ("RS"). Roy Cameron and Everett Richardson were employed by ESD until Cameron resigned in December 1994 and Richardson was laid off in May 1995.

## DISCUSSION

We review de novo a district court's grant of summary judgment. *Botosan v. Paul McNally Realty,* 216 F.3d 827, 830 (9th Cir.2000). Thus, in considering a district court's disposition of a motion for summary judgment, we must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).

The ADEA makes it unlawful for an employer "to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual [who is at least forty years old] with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1); *see id.* § 631(a). We analyze ADEA cases using the framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for reviewing claims brought under Title VII of the Civil Rights Act of 1964. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2105–06, 147 L.Ed.2d 105 (2000) (collecting cases from other circuits); *Ritter v. Hughes Aircraft Co.,* 58 F.3d 454, 456 (9th Cir.1995). Thus, to establish a violation of the ADEA under a disparate treatment theory, a plaintiff must first establish a prima facie case of discrimination. To establish a prima facie case of discrimination under *McDonnell Douglas,* a plaintiff "must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.,* 225 F.3d 1115, 1123 (9th Cir.2000). If a plaintiff establishes a prima facie case, then the burden shifts to the defendant, who must proffer a legitimate, nondiscriminatory reason for its employment decision. *Id.* at 1123–24. If the defendant provides a legitimate reason, then the plaintiff must show that the defendant's proffered reason is pretextual " 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " *Id.*

at 1124 (quoting *Tex. Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

In order for his or her claim to survive an employer's motion for summary judgment, a plaintiff must produce evidence sufficient to raise a genuine issue of material fact as to each prong of her or his prima facie case. *See, e.g., id.* at 1125. With regard to the employer's proffered reason, the plaintiff must provide evidence that creates a genuine issue of material fact as to whether the reason is a pretext for age discrimination. *See id.* at 1127. While evidence that the employer's explanation is false does not compel the conclusion that the employer discriminated, such evidence is "one form of circumstantial evidence that is probative of intentional discrimination." *Reeves,* 120 S.Ct. 2108; *see Chuang,* 225 F.3d at 1127. In addition, if the evidence the plaintiff presents in making his prima facie case raises a genuine issue of material fact concerning the truth of the employer's proffered reason, the plaintiff need not "introduce 'additional, independent evidence of discrimination.' " *Chuang,* 225 F.3d at 1127 (quoting *Reeves,* 120 S.Ct. at 2109).

## A. May

May claims that he makes out a prima facie case of discrimination on the basis of age in violation of the ADEA because (1) he was over forty, and so a member of the protected class; (2) he was qualified for the position of Engineer Manager at Pit 9; (3) the offer of Senior Staff Engineer at Pit 9 constituted a demotion from his previous position as Engineer Manager in Nevada; and (4) LESAT gave the Engineer Manager position at Pit 9 to Paul Lemke, who was seven years younger than May.[2]

---

**2.** Lemke was almost forty-nine in September 1994, when LESAT gave him the Engineer

■ LESAT argues that May's employment transfer was not a demotion. It points out that May admits that he did not lose either salary grade or pay and that no one described his new job as a demotion. In addition, LESAT notes that, according to its policies, an employee who changes job classifications is not demoted unless the new classification involves not only a change in duties or responsibilities, but also a lower salary grade. May cites no evidence for the claim that the change in his job classification constituted a demotion. Rather, he relies entirely on his own assertions in his affidavit that his change in job was "obviously" a demotion. LESAT does not dispute that May went from a job in which he had managerial responsibilities to one in which he did not. However, a change from an administrative to a non-administrative job cannot per se constitute a demotion. *See, e.g., Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 705 (7th Cir.1993) (finding, under the facts of the case, a change from managerial to non-managerial job not to be a demotion). Because May relies entirely on conclusory allegations in his affidavit and fails to provide any evidence that he was demoted beyond the mere fact that his position as Engineer Manager was managerial while his job as a Senior Engineer was not, he has failed to satisfy the third prong of his prima facie case. *See Delange v. Dutra Constr. Co.*, 183 F.3d 916, 921 (9th Cir. 1999) (stating that where "the nonmoving party relies only on his own affidavit to oppose summary judgment, [the party] cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact" (internal quotation marks and citation omitted)). We therefore hold that the district court correctly granted summary judgment to LESAT on May's claim of employment discrimination.

## B. McGough [3]

■ McGough claims that he has established his prima facie case of age discrimination in violation of the ADEA because (1) he was over forty, and so a member of the protected class; (2) he was qualified for numerous positions at Pit 9; (3) he was not offered any position in Idaho; and (4) LESAT gave all the positions for which McGough was qualified to persons younger than he.

McGough takes a scatter-shot approach to the second prong of his prima facie case, at one point claiming that he was qualified for all sixty-six positions available at the Pit 9 project. He presents no evidence for this broad assertion. McGough specifically identifies seven Idaho jobs for which he claims to be "highly qualified": Project Manager, Manager Environmental Operations, Senior Staff Engineer, Pit 9 Engineer Manager, Manager Quality Assurance, Senior Principal Engineer, and Manager of Environmental Health and Safety. McGough relies almost entirely on allegations in his own affidavit to support his assertion that he was qualified for these positions. He presents no evidence to show that his experience as Manager of Nuclear Services qualified him for any of the Idaho jobs he identified, nor does he point to other evidence of qualification.

Manager position at Pit 9. The fact that Lemke was himself in the protected class is of no significance. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (stating that, under the ADEA, "[t]he fact that one person in the protected class has lost out to another person in the protected class is ... irrelevant, so long as he has lost out *because of his age* " (emphasis in original)).

3. Appellant McGough died during this litigation and the district court substituted his estate as plaintiff. For simplicity, we will refer only to "McGough."

LESAT argues that "McGough's conclusory and speculative testimony and subjective opinions ... are not evidence that raises a genuine issue of fact that can defeat summary judgment." LESAT is correct. *See Delange,* 183 F.3d at 921.

"[T]he requisite degree of proof necessary to establish a prima facie case [under *McDonnell Douglas* ] ... on summary judgment is minimal." *Chuang,* 225 F.3d at 1124 (internal quotation marks and citation omitted). However, because McGough has failed to establish a genuine issue of material fact as to his qualifications for the Idaho jobs he identified, we hold that McGough has failed to make out a prima facie case of employment discrimination under the ADEA. We therefore affirm the district court's grant of summary judgment to LESAT on McGough's claim.

C. Afshari

Afshari claims that he has established his prima facie case of age discrimination in violation of the ADEA because (1) he was over forty, and so a member of the protected class; (2) he was qualified for the Idaho positions given to Steve Felton and Jim Heffington; (3) he was not offered any position in Idaho; and (4) LESAT gave all the positions for which Afshari was qualified to persons younger than he (Felton and Heffington).

LESAT hired Afshari as a Senior Instrument and Controls Engineer. To establish the second prong of his prima facie case, Afshari claims that he was qualified for the Idaho positions filled by Felton and Heffington. Felton was hired to work on the chemical leaching system at Pit 9. Afshari presents no evidence that he was qualified to work on Pit 9's chemical leaching system. Thus Afshari's claim concerning Felton's position does not establish the second prong of Afshari's prima facie case.

■ The parties dispute exactly what job LESAT hired Heffington to perform in Idaho. Afshari claims that Heffington was hired as an instrument and controls engineer ("I & C engineer"), the position Afshari held in Nevada. LESAT states that it hired Heffington as a chemical and systems engineer. Afshari claims that even if Heffington was hired as a systems engineer, Afshari was qualified to fill this position. However, the only evidence Afshari cites in support of this claim is his own conclusory deposition statement that the positions of systems engineer and I & C engineer are the same thing. If Heffington was hired as a systems engineer, then Afshari has not produced evidence that he was qualified for the position Heffington filled in Idaho. *See Delange,* 183 F.3d at 921.

■ By contrast, if Heffington was hired as an I & C engineer, then, because Afshari held this position in Nevada, Afshari may have satisfied the second prong of his prima facie case. Afshari points to various pieces of evidence to support the claim that Heffington was hired as an I & C engineer. However, the documentary evidence Afshari cites is unauthenticated. Because LESAT objects to its admission, we will not consider it. *See Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1987) ("It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment. In order to be considered by the court, documents must be authenticated by and attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." (insertion in original) (internal quotation marks and citation omitted)). In addition, the testimonial evidence Afshari cites does not support his contention that Heffington was hired as an I & C engi-

neer. Afshari has failed to establish a genuine issue concerning whether Heffington was hired as an I & C engineer. He has therefore failed to create a genuine issue of material fact with regard to the second prong of his prima facie case. For this reason, we affirm the district court's grant of summary judgment to LESAT on Afshari's claim.

D. Capron

Capron claims that he has established a prima facie case of employment discrimination in violation of the ADEA because (1) he was over forty, and so a member of the protected class; (2) he was qualified for the Idaho positions given to Ronald May, Steve Felton, Scott McKeag, Blake Burt, and Blaine Bielke; (3) he was not offered any position in Idaho; and (4) LESAT gave all the positions for which Capron was qualified to persons younger than he.

 LESAT concedes that Capron was qualified for the position of Senior Staff Engineer, a job which LESAT gave to Ronald May. Thus Capron has established the second prong of his prima facie case. However, May was older than Capron. Capron cannot, therefore, make out the fourth prong of his prima facie case by relying on the fact that LESAT gave the Senior Staff Engineer position to May.

 With regard to the other positions he identifies, Capron has failed to establish the second prong of his prima facie case.[4] Capron claims he was qualified for the

position of Senior Engineer, offered to Felton; Staff Engineer, given to McKeag; Retrieval Program Engineer, given to Burt; and Designer, given to Bielke. Capron never explains what the requirements were for each position he identifies nor does he point to evidence that he had the requisite qualifications for each job. Instead, Capron rests on conclusory allegations of qualification in his brief. This is not enough to avoid summary judgment. *See Delange*, 183 F.3d at 921. Capron also relies on a document created by May, Capron's supervisor, which ranks engineering staff "in order of preference." While Bielke and McKeag are ranked higher than Capron, Capron is ranked higher than Felton. However there is no indication of the criteria that May used in ranking the engineers in his department, nor how this ranking is relevant to job qualifications at Pit 9.[5]

Capron has provided no evidence that he was qualified for any of the Pit 9 positions which he identifies. He has therefore failed to establish the second prong of his prima facie case. We therefore affirm the district court's grant of summary judgment to LESAT on Capron's claim.

E. Cameron

Cameron claims that he has established a prima facie case of employment discrimination in violation of the ADEA because (1) he was over forty, and so a member of the protected class; (2) he was (a) qualified to perform the work given William Cole, Rick Von Remortal, Diedre O'Leary,

---

**4.** Like McGough, Capron takes a scatter-shot approach to the second prong of his prima facie test, at one point asserting that he was qualified to fill all sixty-six TAD positions at Pit 9. Capron presents no evidence for this sweeping claim.

**5.** The ranking includes individuals with different specialities (e .g., Afshari, who is an elec-

trical engineer, and Capron, who is a mechanical engineer). Thus, it is not apparent how this preference ranking was meant to be used in identifying which individuals were more qualified for which positions. Indeed, Capron presents no evidence that the document was even meant to be used in selecting candidates for Pit 9 positions.

Marti Minnich, and Kent Snyder, all scientists within ESD, (b) qualified for the position of Quality Assurance Officer for the EMR & D contract, (c) and qualified for the position of Quality Assurance Officer at Pit 9; (3) LESAT took an adverse employment action against him because (a) it did not give him work that it gave to other ESD scientists, (b) he was removed from the Quality Assurance Officer position for the EMR & D contract, and (c) he was not given the Quality Assurance Officer Position at Pit 9; and (4) LESAT gave all the positions for which Cameron was qualified to persons younger than he.

■ Cameron claims that LESAT engaged in age discrimination when it gave work to other scientists in ESD but not to him. LESAT argues that it did not give the work Cameron identifies to Cameron because it was work that other scientists had under other existing contracts. It further argues that Cameron fails to identify any company policy or rule of law which would require the company to displace workers in order to find him work. Cameron does not reply to these arguments. Thus, even assuming that Cameron makes out a prima facie case of employment discrimination with regard to the work done by other ESD scientists, Cameron fails to provide evidence which establishes a genuine issue of material fact concerning whether LESAT's proffered reason is pretextual.

■ Cameron also asserts that LESAT engaged in employment discrimination when it replaced him with Byers as the Quality Assurance Officer for the EMR & D contract. Even assuming that Cameron makes out a prima facie case with regard to this employment action, he does not create a genuine issue of material fact with regard to LESAT's proffered reason. LESAT argues that the EPA decided that it did not want non-EPA technical directors

and that Cameron's position within ESD was no longer chargeable under a contract. Previously, EPA had defunded the Quality Assurance position. Thus, LESAT asserts, it "loaned" Cameron to TAD so that his time would be partially chargeable to that division. In addition, LESAT contends that it asked Byers to take on the EMR & D quality assurance duties, because Byers had chargeable time under the EMR & D contract and was already engaged in quality assurance work for the contract. This is a non-discriminatory reason for removing Cameron from the Quality Assurance position. Cameron fails to respond to LESAT's explanation and presents no evidence that LESAT's explanation is pretextual.

■ Finally, Cameron claims that he was forced to retire when he was not offered the position of Quality Assurance Manager at Pit 9. Because he has presented no evidence that he was qualified for the position of Quality Assurance Manager at Pit 9, Cameron has not established a prima facie case of employment discrimination on the basis of this claim. It is true that Cameron was a Quality Assessment officer while he worked in ESD. However, Cameron does not contest the fact that the work at ESD involved monitoring and assessing environmental conditions, while the work at Pit 9 involved cleaning up nuclear waste using chemical leaching and plasma arcing technologies. Cameron admits to being unfamiliar with the technology used at Pit 9. Even when viewing the evidence in the light most favorable to him, Cameron has failed to create a genuine issue of material fact as to whether he was qualified for the Quality Assurance position at Pit 9. We conclude, therefore, that Cameron has failed to establish a prima facie case on the basis of this employment action.

Because Cameron has either failed to establish a prima facie case of employment

discrimination in violation of the ADEA or has failed to create a genuine issue of material fact concerning LESAT's proffered reasons for its employment actions, we affirm the district court's grant of summary judgment to LESAT on Cameron's claim.

## F. Richardson

Richardson claims that he has established a prima facie case of employment discrimination in violation of the ADEA because (1) he was over forty, and so a member of the protected class; (2) he was qualified for the positions of RS Program Manager, RS Project Manager, and for the Project Manager Position held by Lowman and the Planning and Logistics Manager position held by Sheppe; (3) he was removed from the positions of RS Program Manager and RS Project Manager and he was not given Lowman or Sheppe's position as Project Manager; and (4) LESAT replaced Richardson as RS Program Manager with Lucas, who is younger than Richardson; later LESAT replaced Richardson as RS Project Manager with Mata, who is younger than Richardson; and LESAT failed to give Richardson either Lowman or Sheppe's position.

 As a threshold matter, LESAT argues that Richardson's claims concerning his removal from the RS Program and Project Manager positions are time barred. LESAT's argument is correct. The ADEA requires plaintiffs to file their employment discrimination claims with the Equal Employment Opportunity Commission or with a state agency charged with enforcing a state's employment discrimination laws before they may commence an ADEA action in court. *See* 29 U.S.C. § 626(d). In order to file a charge with a state agency, plaintiffs must file "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(2). In

this case, Richardson filed a complaint with the Nevada Equal Rights Commission on November 28, 1995. As LESAT notes, this was more than two years after the adverse employment action in September 1993 and more than a year and a half after the adverse employment action in March 1994. LESAT argues that since Richardson filed his complaint with the Nevada Equal Rights Commission more than 300 days after the 1993 and 1994 employment actions, his claims concerning these actions are barred by the statute of limitations.

 In reply, Richardson argues that the three employment actions of which he complains are part of a continuing violation. If a plaintiff establishes a continuing violation, then, so long as one of the adverse employment acts occurs within the statute of limitations, the actions falling without are not barred. *See Morgan v. Nat'l R.R. Passenger Corp.*, 232 F.3d 1008, 1014 (9th Cir.2000). For a claim to survive summary judgment after failing to satisfy the limitations period requirement, a plaintiff must raise a genuine issue of material fact concerning (1) the existence of a continuing violation and (2) whether the violation continued into the limitations period. *See id.* at 1016. A plaintiff can establish a continuing violation "by showing a series of related acts one or more of which are within the limitations period—a serial violation. A serial violation is established if the evidence indicates that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Id.* at 1015.

 In this case, Richardson cannot avail himself of the continuing violation theory because he has failed to establish a prima facie case of employment discrimination with regard to his layoff in 1995, the one adverse employment action that occurred within the limitations period. Rich-

ardson argues that under LESAT policy he should have been given the position of an ESD manager who was less senior than he. LESAT policy states that before an employee with ten years or more of continuous service, such as Richardson, is laid off, management should consider displacing less senior personnel "in the same job or in another job which the ... employee is fully qualified to perform." Richardson specifically identified two manager positions held by less senior personnel, those of Lowman and Sheppe, which he claims he was fully qualified to perform. He also introduced evidence that ESD only offered lower-level, non-managerial jobs as an alternative to layoff and that ESD management never considered displacing a less senior manager in favor of Richardson.

 LESAT argues that Richardson has failed to establish a prima facie case of employment discrimination concerning his layoff because he was not qualified for either Lowman or Sheppe's positions and because Lowman was older than Richardson. Richardson does not contest the claim that Lowman is older than he is. With regard to Lowman's position, therefore, it is apparent that Richardson cannot make out the fourth prong of his prima facie case: Richardson cannot demonstrate that a younger employee was treated more favorably than he because Lowman was not a younger employee. With regard to Sheppe's position, Richardson presents no evidence of the requirements of Sheppe's job, nor does he point to any evidence that he has the requisite qualifications for the position. He relies entirely on his own conclusory deposition and affidavit testimony. This is not sufficient to create a genuine issue of material fact as to the second prong of Richardson's prima facie

case of employment discrimination based on his 1995 layoff.[6] *See Delange*, 183 F.3d at 921.

Although Richardson alleges that the same person, Simon, removed him from his positions as RS Program Manager and RS Project Manager and ultimately laid him off and that Simon was motivated in each instance by Richardson's age, Richardson has not established a prima facie case with regard to his 1995 layoff. He does not, therefore create a genuine issue of material fact concerning whether the violation continued past the limitation period. Because Richardson fails to establish a prima facie case with regard to his 1995 layoff and because, as a result, the 1993 and 1994 employment actions are barred by the statute of limitations, we hold that the district court was correct to grant LESAT summary judgment on Richardson's claim.

## CONCLUSION

The plaintiffs in this case either fail to present a prima facie case of age discrimination in violation of the ADEA or fail to create a genuine issue of material fact concerning whether LESAT's proffered reasons for its adverse employment actions were pretextual. On the evidence presented, no rational jury could find in favor of any of the plaintiffs. For this reason, the order of the district court granting summary judgment to LESAT is

AFFIRMED.

---

6. Richardson emphasizes that it was he who hired Sheppe. However, the fact that Richardson had the authority to hire Sheppe is not evidence that Richardson had the qualifications to perform the job for which he hired her.